NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GENE S. GROVES,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2013-7077

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 06-1252, Judge William P. Greene, Jr.

---

Decided: September 16, 2013

---

GENE S. GROVES, of Shafter, Texas, pro se.

MICHAEL D. SNYDER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK T. MANHARDT, Assistant Director. Of coun-

sel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and MARTIN J. SENDEK, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————

Before DYK, O'MALLEY, and TARANTO, *Circuit Judges.*

PER CURIAM.

Gene S. Groves appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") denying in part his application for an award of expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). *See Groves v. Shinseki*, No. 06-1252(E) (Vet. App. Nov. 21, 2012) ("*Groves II*"). We *affirm.*

## BACKGROUND

Groves served in the U.S. Army from January 1970 to August 1971. In March 1971, he suffered a shell fragment wound to his right thigh. In September 1971, the Department of Veterans Affairs ("VA") regional office ("RO") awarded him service connection with a 10% disability rating for that injury under diagnostic code ("DC") 7804, *see* 38 C.F.R. § 4.118, DC 7804 (1971) (covering "[s]cars, superficial, tender and painful on objective demonstration"). In June 1972, Groves complained of "tingling and burning pain from his anteromedial thigh to his knee," and a VA physician noted that the shell fragment "may have nicked [Groves'] saphenous nerve." *Groves v. Shinseki*, No. 06-1252, slip op. at 2 (Vet. App. Nov. 25, 2009) ("*Groves I*").

In September 1972, Groves sought an increased disability rating for the service-connected injury to his right thigh. The same month, the RO recharacterized Groves's injury under DC 5314, *see* 38 C.F.R. § 4.73, DC 5314 (1972) (covering "muscle injuries" in the anterior thigh),

still with a 10% disability rating. The RO separately granted service connection with a 10% disability rating for an injury to Groves's right saphenous nerve under DC 8627, *see* 38 C.F.R. § 4.124a, DC 8627 (1972), resulting in a combined disability rating of 20%. However, because it recharacterized Groves's condition, the RO did not grant Groves's request for an increased disability rating with respect to the service-connected injury initially awarded in 1971 under DC 7804.

In August 1998, Groves applied for vocational rehabilitation benefits. Several years passed in which the VA attempted to arrange for Groves to attend a required initial counseling session. Groves did not do so. In April 2001, a VA counselor informed Groves that he was returning Groves's records to the RO in discontinued status "due to [Groves's] refusal to cooperate." *Groves I*, slip op. at 5. Groves appealed to the Board, arguing that the VA's handling of his application for vocational rehabilitation failed to comply with numerous regulations. For example, Groves asserted that the VA failed to comply with 38 C.F.R. § 21.362(b), which requires the VA to, inter alia, "make a reasonable effort to inform the veteran and assure his or her understanding of . . . [t]he services and assistance which may be provided . . . to help the veteran maintain satisfactory cooperation and conduct and to cope with problems directly related to the rehabilitation process."

In separate proceedings before the RO, Groves in October 2003 sought to reopen the September 1972 RO decision (denying an increased disability rating for his thigh injury) based on clear and unmistakable error ("CUE"). Groves contended that the September 1972 decision "impermissibly severed service connection for [his] tender scar" and that he "was never notified of the severance." *Groves I*, slip op. at 2 (quotation marks omitted). In July 2004, the RO found no CUE in the

September 1972 decision. Groves also appealed to the Board from these proceedings.

On December 1, 2005, the Board issued separate decisions addressing Groves's two appeals. Regarding Groves's CUE claim, the Board found that, contrary to Groves's argument, the September 1972 RO decision "did not sever service connection" and that the revised diagnosis was "required by the regulations to properly reflect changes in the medical evidence." *See id.* at 3 (quotation marks omitted). The Board therefore found no CUE. The Board also rejected Groves's appeal of the denial of vocational rehabilitation services, finding that Groves had "failed to cooperate by refusing to participate in VA counseling and evaluation." *Id.* at 5. Groves, proceeding pro se, appealed both decisions to the Veterans Court, which issued a single decision addressing both appeals on November 25, 2009. *See id.*

The Veterans Court affirmed the Board's CUE decision. It reasoned that "because [Groves'] rating was not reduced, nor his award of service connection severed, the action taken by the September 1972 RO constituted only a nonsubstantive administrative act and not a severance action." *Id.* at 4. The Veterans Court therefore concluded that the alleged lack of notice of a severed service connection provided no basis for a finding of CUE. *Id.* However, the Veterans Court vacated the Board's vocational rehabilitation decision. As to that appeal, "the Secretary concede[d]" that "the Board erred by not addressing whether [the] VA had complied with various regulatory requirements before discontinuing services" to Groves. *Id.* at 6. The Veterans Court therefore concluded that the Board had failed to provide an adequate statement of the reasons or bases for its decision, as required by 38 U.S.C. § 7104(d)(1). The Veterans Court remanded for further adjudication on the vocational services issue.

On January 19, 2010, Groves filed an application for litigation expenses pursuant to EAJA, 28 U.S.C. § 2412(d)(1). Groves sought a total of $22,727.72, consisting of $99.82 for postage, $1,184.00 for photocopying, and $21,443.90 for "computer legal/records research." *See Groves II*, slip op. at 1, 4 (alteration and quotation marks omitted). The government opposed Groves's EAJA application. Although the government conceded that Groves was a prevailing party under EAJA with respect to his vocational rehabilitation appeal, it argued, inter alia, that he did not prevail with respect to his CUE appeal, and that his EAJA application did not differentiate between expenses incurred with respect to the two separate Board appeals. *See id.* at 2. The government also argued that the bulk of Groves's claim was for his own time spent on research, an item for which Groves could not be compensated.

The Veterans Court awarded Groves $99.82 for postage, but denied his application as to the $1,184 in photocopying expenses and $21,443.90 in research costs. *Id.* at 4. Regarding the postage expenses, the court found that "postage is a reasonable and necessary expense" and that "numerous pleadings were filed and that copies were mailed to both the Court and the Secretary." *Id.* However, the court denied Groves's application for photocopying expenses, finding Groves's documentation of those expenses insufficient. *Id.* It explained that, for example, Groves may have included the cost of paper in his application, and the cost of paper was not recoverable under EAJA.[1] *Id.* Finally, the court rejected Groves's request

---

[1] The Veterans Court based its conclusion that the cost of paper was not recoverable on its prior decision in *March v. Brown*, 7 Vet. App. 163, 170 (1994), which reasoned that the cost of paper used in photocopying is an "equipment-maintenance and overhead item[] of a type

for $21,443.90 in expenses for "computer legal/records research." *Id.* at 3–4 (quotation marks and alteration omitted). The court found that Groves did "not explain how much of his request [was] for the time he spent researching, which is unreimbursable, . . . versus the expenses he incurred in conducting his research." *Id.* (citation omitted). The court added that "[t]here is also no indication of whether research expenses were incurred in developing arguments against the first Board decision, the second Board decision, or both." *Id.* at 4. The court therefore found Groves's itemization "too vague and lacking in detail" to support his claim for legal research expenses. *Id.* at 3.

Groves appeals. Our jurisdiction is pursuant to 38 U.S.C. § 7292.

### DISCUSSION

"We review the Veterans Court's interpretation of EAJA *de novo*." *Kelly v. Nicholson*, 463 F.3d 1349, 1352 (Fed. Cir. 2006) (citing *Vaughn v. Principi*, 336 F.3d 1351, 1354 (Fed. Cir. 2003)). EAJA provides that

> [e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and . . . *expenses . . . incurred by that party in any civil action* (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was

---

[that] [it found] would not normally be billed to a client." *Id.* In light of our disposition, we need not decide here whether the Veterans Court was correct that the cost of paper is not recoverable.

substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

In *Kay v. Ehrler*, the Supreme Court held that pro se litigants may not recover attorney's fees under the Civil Rights Attorney's Act of 1976, *see* 42 U.S.C. § 1988, and that this rule even extends to lawyers who litigate their own cases pro se. 499 U.S. 432, 435, 438 (1991). The same rule applies to all pro se litigants under EAJA. *E.g.*, *Krecioch v. United States*, 316 F.3d 684, 687-88 (7th Cir. 2003); *SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994). Prior to *Kay*, we held that pro se litigants may recover expenses, but not attorneys' fees. *Naelek v. Dep't of Transp.*, 845 F.2d 976, 981 (Fed. Cir. 1988). It is unsettled whether, in light of *Kay*, the recovery of expenses by pro se litigants is still proper, and if so, exactly which types of expenses are recoverable.

Nonetheless, cases in other circuits have made clear that the time spent by a pro se litigant on such efforts as legal research is not recoverable. In *Krecioch*, a claimant who succeeded in part in a civil forfeiture proceeding sought attorney's fees and expenses under EAJA. 316 F.3d at 686. Among Krecioch's "expenses" was $2,800.00 for "paralegal services" performed by a fellow inmate, which included "research [and] drafting motions." *Id.* (quotation marks omitted) (alteration in the original). Although this "describe[d] the activities of an attorney," the Seventh Circuit held that attorney's fees were not recoverable because Krecioch was a pro se litigant. *Id.* at 687-88.

Similarly, in *Kooritzky v. Herman*, a pro se claimant sought attorney's fees and expenses after successfully challenging a Department of Labor regulation. 178 F.3d 1315, 1316 (D.C. Cir. 1999). Among the "expenses" claimed by Kooritzky was "expert witness" expenses for the time Kooritzky spent "acting as an immigration law

'expert' in his own case." *Id.* at 1321. The court held that "a *pro se* attorney-litigant may not evade the prohibition against recovery of attorney fees under the EAJA by seeking to characterize himself as an 'expert witness.'" *Id.* The court reasoned that a contrary rule "would allow attorney-litigants to evade the [Supreme] Court's pronouncement in *Kay* by proclaiming themselves legal 'experts' and thereby allowing them to recover attorney fees relabeled as 'expert expenses.'" *Id.* at 1323. The court therefore held that Kooritzsky's claim for fees for his own time, "whether characterized as 'attorney fees' or 'expert expenses' must fail." *Id.* at 1322.

Here, Groves argues that the Veterans Court erred by failing to award him "computer/legal research" expenses. Appellant's Br. 5. The Veteran's Court noted that Groves's application "does not explain how much of his request is for the time he spent researching, which is unreimbursable." *Groves II*, slip op. at 3. We agree with the Seventh and D.C. Circuits that compensation for time spent developing claims or legal positions is not recoverable under EAJA. *See Kooritzsky*, 178 F.3d at 1322–23; *Naekel*, 845 F.2d at 981. We therefore conclude that the Veterans Court committed no legal error in denying Groves's request for research expenses. For the same reason, the Veterans Court committed no legal error in denying Groves's claims with respect to photocopying expenses on the ground Groves failed to distinguish between expenses incurred with respect to the successful and unsuccessful claims.

Groves also appears to argue that the Veterans Court improperly held his pro se filings to the same standard as those filed by attorneys. However, while "*pro se* filings must be read liberally," *Harris v. Shinseki*, 704 F.3d 946, 948 (Fed. Cir. 2013), we cannot agree that the Veterans Court held Groves's application to an inappropriately high standard. Such filings must still be clear enough to enable effective review. *See, e.g., Cruz v. Gomez*, 202 F.3d

593, 597 (2d Cir. 2000) (concluding "[e]ven after allowing for due deference to a pro se plaintiff," "vague" and "conclusory" allegations were not sufficient to state a claim). Here, the Veterans Court identified significant and pertinent ambiguities that prevented it from effectively reviewing Groves's application. We conclude that the Veterans Court did not err by failing to read Groves's filings liberally.

We have considered Groves's remaining arguments and find them to lack merit.

## AFFIRMED

COSTS

No costs.